**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RAYMOND LAMAR BURGIN,**

        **Plaintiff,**

**-vs-**                               **Case No. 6:09-cv-1233-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

#### A.    **Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on February 28, 2006, alleging an onset of disability on June 18, 2005, due to pulmonary problems, congestive heart failure on the right side, swelling in the right leg, and sleep apnea. R. 80, 87, 99, 351, 407-08. His applications were denied initially and upon reconsideration. R. 47, 56. Plaintiff requested a hearing, which was held on March 19, 2008, before Administrative Law Judge Patrick McLaughlin (hereinafter referred

to as "ALJ"). R. 383, 430. In a decision dated March 20, 2009, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 14-25. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 9. The Appeals Council denied Plaintiff's request on July 9, 2009. R. 6. Plaintiff filed this action for judicial review on July 16, 2009. Doc. No. 1.

**B.     Medical History and Findings Summary**

Plaintiff was born on April 27, 1959, and earned a high school diploma. R. 66, 85. He served in the Air force for more than three years, and worked as a deliveryman for almost twenty years. R. 72, 388. At the time of the hearing, he worked in a homeless shelter in exchange for a room and $100 a week. R. 391.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of chronic pulmonary insufficiency ("COPD") and obesity. R. 26, 27. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from COPD, which was a "severe" medically determinable impairment, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 16, 19. The ALJ determined that Plaintiff's impairments of pulmonary hypertension, shortness of breath, obesity, sleep apnea and swelling of the legs, feet, and ankles did not impose vocationally restrictive limitations for a period of 12 continuous months and did not rise to a "severe" level as defined in the regulations. R. 17.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, with the additional limitations that he was not able to climb ladders or scaffolds, and he was not able to tolerate exposure to unprotect heights, dust, odors, fumes, pulmonary irritants. R. 19-20. In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's determination of the RFC. R.

22. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 23. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a ticket seller, labeler, and security system monitor. R. 24. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 25.

Plaintiff now asserts three points of error. First, he argues the ALJ erred by not finding his obesity, vascular disease, and sleep apnea were severe at Step Two of the sequential evaluation process. Second, he asserts that the ALJ erred by failing to include side effects that Plaintiff experienced from his medications. Third, Plaintiff contends the ALJ erred in considering Plaintiff's work activity after his alleged onset date. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### *III. ISSUES AND ANALYSIS*

**A.     Obesity, vascular disease, and sleep apnea as severe impairments**

Plaintiff argues that the medical evidence reflected morbid obesity which he contends the ALJ should have found to be severe and significantly limiting his ability to perform basic work activities. Plaintiff also contends the ALJ did not apply the correct legal standards concerning Plaintiff's

vascular disease and sleep apnea. The Commissioner responds that Plaintiff failed to show that his weight interfered with his ability to work, and the ALJ properly considered all of Plaintiff's impairments.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. As the Commissioner points out, an impairment qualifies as "severe" under the regulations only if it limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a) (2009); *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987). It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would

clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The ALJ found in Plaintiff's favor at step two of the sequential evaluation process by finding that he had a severe impairment due to COPD (R. 16) and continued with the other steps of the sequential evaluation process to find Plaintiff could perform light work. R. 23. The issue in this case is whether and to what extent Plaintiff's obesity, vascular disease, or sleep apnea limited his ability to work. The ALJ found that Plaintiff's condition limited him to a significant range of light work (with additional limitations not relevant to this analysis[1]). R. 19-20.

*1. Obesity*

Plaintiff argues that the ALJ failed to recognize Plaintiff's obesity as severe even though Plaintiff's treating physician (Dr. Rahim) and the consulting examiner, Dr. Barber described Plaintiff as "morbidly obese." R. 212, 215, 337. Plaintiff contends the ALJ did not consider the effects of Plaintiff's morbid obesity in determining his residual functional capacity (R. 19-23), despite noting that he was "morbidly obese." R. 23. Plaintiff also argues that although the ALJ noted that Plaintiff had lost weight from 375 to 360 pounds (R. 21), the ALJ "inexplicably" determined that Plaintiff's obesity was not disabling because he had *not* lost weight. R. 23. He contends the ALJ's finding that Plaintiff's obesity was not severe is not based on substantial evidence because the ALJ failed to give any reasons or cite any evidence to support the finding. Doc. No. 13.

The Commissioner contends that Plaintiff never alleged in the administrative proceedings that his obesity affected his ability to work, nor did he claim that his weight or obesity was a cause of his alleged disability in the documents he submitted with his applications. R. 80, 99. The Commissioner contends that Plaintiff's only statements about his obesity were his testimony about how much he

---

[1]The ALJ specifically found that Plaintiff was not able to climb ladders or scaffolds and could not tolerate exposure to unprotected heights, dust, odors, fumes, or pulmonary irritants. R. 20.

weighed – which Plaintiff concedes the ALJ acknowledged in his decision (R. 19-20) – but neither Plaintiff nor his attorney otherwise mentioned his weight or obesity at the hearing in the context of a severe impairment due to obesity or that his weight affected his ability to work, as he now argues. R. 21, 407, 413.

Plaintiff's morbid obesity is only relevant to the extent it impacts his ability to work. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (the mere diagnosis of a condition says nothing about the severity of the condition). In Plaintiff's case, although his physicians noted Plaintiff's height and weight and that he was morbidly or extremely obese, none of them imposed functional limitations relating to his obesity. R. 142, 146, 212, 218, 221, 254, 282, 284, 290-92, 295, 316, 325. When his physicians did discuss his obesity, it was usually in the context of recommending weight loss to improve his sleep apnea and pulmonary function test. *See, e.g.,* R. 136, 243-44, 282, 284, 312, 316 ("extensively" discussed), 331 ("should be aggressively pursued"). None of his physicians suggested that Plaintiff had functional limitations from obesity preventing him from performing the range of light work found by the ALJ due to his weight. Plaintiff fails to point to any particular functional limitation impacting his ability to work that is due to his obesity.

In unpublished decisions, the Eleventh Circuit has affirmed denial of disability benefits where the record contains no evidence showing that the claimant's obesity affected his ability to perform work-related activities. *See, e.g., Wind v. Barnhart*, 133 Fed.Appx. 684, 690-91 (11th Cir. 2005); *Hennes v. Commissioner of Social Sec. Admin,* 130 Fed.Appx. 343, 348 (11th Cir. 2005). Similarly, in a published decision of the Ninth Circuit, *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), the claimant argued that the ALJ had not considered her obesity (5'4" and weighed 215 pounds) throughout the sequential evaluation process as required under SSR 02-1p, but the appellate court found that the claimant had not set forth any evidence that would support the diagnosis and findings

-7-

of a listed impairment. *Burch*, 400 F.3d at 683. The claimant testified that she experienced lower back pain that precluded her from standing, sitting, or walking for long periods and limited her daily activities, and the medical evidence showed that she had early degenerative disc disease and mild to moderate obstructive pulmonary disease. *Id.* As in this case, the claimant had not identified any evidence of functional limitations on her ability to work due to obesity which would have impacted the Commissioner's analysis, where the only evidence in the record relating to obesity were notes from doctors indicating that she was obese or had gained weight. *Id.* at 683-84.

Plaintiff also argues that the Appeals Council erred in not reversing the ALJ's decision based on putatively new[2] and material evidence from his treating physicians, Drs. Verma and Hecht[3], opining that his obesity increased the severity of the symptoms and limitations caused by Plaintiff's other medically diagnosed impairments; this evidence which was submitted to the AC on May 18, 2009, two months after the ALJ's March 20, 2009 decision.. *See* R. 357. When a plaintiff submits additional evidence to the Appeals Council and the Appeals Council denies review, the court must determine whether the Commissioner's decision is supported by substantial evidence on the record as whole. *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007); *Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL 2492460, *7 (M.D. Fla. Aug. 30, 2007) (under *Ingram*, the court reviews whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council).

In the forms Plaintiff submitted to the AC that were completed by Drs. Verma and Hecht, they simply checked a "yes" box in response to the question, "Does obesity increase the severity of the

---

[2]The evidence is arguably not new since it is based on treatment of Plaintiff dating back to 2006 and more detailed treatment records from these physicians from the same time period are in the record.

[3]Opinion evidence Plaintiff cites from "longtime nurse practitioner" Silvia Triplett carries no weight because she is not an acceptable treating source.

symptoms and limitations caused by [Plaintiff's] other medically diagnosed impairments?" (R. 363-65). However, the physicians either failed to list one of Plaintiff's conditions as obesity (Dr. Verma - R. 363) or listed no conditions at all (Dr. Hecht R. 365), and they offered no new records documenting any limitations from obesity. The AC was not required to give any weight to the non-SSA "check-the-box" forms which either conflicted with or did not support the treatment records from the same time period. *See, e.g., Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) ("form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best") and *Spencer o/b/o Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (rejecting an opinion from a non-examining physician who merely checked boxes on a form without providing any explanation of his conclusions).

Plaintiff also argues the AC erred because it "gave no indication that it actually considered" the additional evidence in denying Plaintiff's request for review. Doc. No. 13 at 12. In response, the Commissioner points to the AC's specific statement that it considered the additional evidence noted in the list in the Order of Appeals Council attached to the Notice of Appeals Council Action. R. 6-8A. The AC clearly considered the two physicians' questionnaires because they are listed there (R. 8A), but the AC concluded the evidence did not provide a basis for changing the ALJ's decision. R. 6-7. The ALJ's decision and the AC's denial of review were based on substantial evidence in the record as a whole.

2. *Vascular Disease*

Plaintiff argues the ALJ erred in not finding his "vascular disease" – which he describes as causing his right leg to swell – to be a severe impairment because Dr. Hassan diagnosed him with lower extremity swelling (R. 177), he was admitted to Bartow Regional Medical Center for foot swelling (R. 309), and he testified that because of his leg swelling he was unable to sit or stand for

long (R. 399, 408), and must elevate his legs after an hour or two. R. 408. Because the vocational expert testified that there was not a single occupation that would allow someone to have his or her legs elevated for any amount of time during the day (R. 425-26), Plaintiff argues the ALJ erred in finding Plaintiff's vascular disease/leg swelling to be non-severe, and in omitting any discussion of his legs swelling.

The ALJ found that Plaintiff's condition limited him to a significant range of light work (Tr. 19-20) with the additional limitations that he could not climb ladders or scaffolds and could not tolerate exposure to unprotected heights, dust, odors, fumes, or pulmonary irritants. R. 20. The Commissioner argue that Plaintiff failed to show that his alleged vascular disease caused additional functional limitations.

As the Commissioner points out, Plaintiff's "vascular disease" was actually related to his pulmonary condition (R. 136); no doctor described vascular disease as the cause of his leg swelling. Instead, Plaintiff testified that the physicians told him that congestive heart failure on his right side causes his leg to fill up with fluid, which occurs "real bad" every three to six months. R. 407. (To satisfy the requirements of step two, an impairment must be severe for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 217 (2002)). The records shows that Plaintiff periodically had edema in his legs (August 2006 and February 2007); however, examinations of his extremities were more often normal with no swelling/edema. *See* R. 107, 119, 142, 145-47, 176, 186, 211, 217, 221, 244, 255, 280-81, 284, 290-92, 310, 312, 315, 324, 336.

Records from Dr. Hassan, who diagnosed him with lower extremity swelling August 2006, show that he was advised to keep his legs elevated, and if the swelling returned to have a CT scan of the abdomen and pelvis. R. 177. Other tests run at the time for deep venous thrombosis were negative and for congestive heart failure showed normal results. R. 178, 180. An echocardiogram

test showed probable mild tricuspid and mitral regurgitation present. R. 183. Plaintiff was admitted to Bartow Regional Medical Center in late February 2007 and he the preliminary diagnosis was angina; a number of tests were ordered. R. 244. A cardiac catheterization was normal; there was no significant mitral regurgitation and both coronary arteries were free of disease; again, there was no deep vein thrombosis causing the right leg to swell. R. 219, 222-23, 232, 236, 241. Plaintiff returned to Bartow Regional Medical Center complaining of foot swelling in April 2007, but there are not treatment or diagnostic notes provided which report the cause of the swelling at that time. R. 309. The ALJ appropriately noted these normal cardiac test results and that the resolution of leg swelling during the hospital stays, in finding that Plaintiff's "swelling of the legs, feet, and ankles did not impose vocationally restrictive limitations for a period of 12 continuous months." R. 17-18.

Plaintiff also argues that the AC erred in denying review based on the check-the-box form signed by Dr. Hecht on which he checked "yes" to the question of whether Plaintiff needed keep his feet elevated most of the time. R. 364-65. (Dr. Verma failed to check yes or no to the question. R. 363). As explained *supra* Dr. Hecht's opinion is not supported by his treatment records and the other documentation of treatment for Plaintiff's periodic leg swelling. The medical evidence does not establish that Plaintiff's periodic leg swelling lasted for more than a few days, or affected his ability to work, or that he was diagnosed with a "vascular disease" as the cause. The ALJ's decision finding "leg swelling" not severe, and the AC's decision to deny review on the issue, were based on substantial evidence.

### 3. *Sleep apnea*

Plaintiff argues that ALJ should have found his sleep apnea to be a severe limitation based on the two sleep studies by Dr. Dinkla and his diagnosis of Plaintiff's condition as obstructive sleep

-11-

apnea[4], as well as Plaintiff's testimony that he becomes winded easily and falls asleep if he sits too long. R. 186-193; 399, 403. He cites the opinion of other doctors, Dr. Rahim and Dr. Verma, who also diagnosed Plaintiff with sleep apnea syndrome. R. 213-14, 282, 284, 329-30. The consulting examiner, Dr. Barber, also noted Plaintiff's diagnosis of obstructive sleep apnea. R. 337. Plaintiff points to the symptoms of sleep apnea as outlined by Dr. Rahim, who found shortness of breath, loud snoring, and unusual fatigue; Dr. Rahim twice diagnosed hypoxemia, severe daytime sleepiness, fatigue, insomnia, and anxiety. R. 210-15. He also cites Bartow Regional Medical Center's discharge diagnoses that report "a history of obstructive sleep apnea." R. 219. Plaintiff contends that his "severe" obstructive sleep apnea causes limitations in his ability to do basic work activities and the ALJ erred in not finding it to be a "severe" limitation.

The Commissioner argues that, although Plaintiff underwent sleep studies and was diagnosed with sleep apnea, Plaintiff failed to show that his sleep apnea would have interfered with his ability to perform work activities for a period of at least twelve consecutive months. R. 142, 185-93, 210-18, 329-31. While the record does show Plaintiff complained of fatigue, daytime sleepiness, and other symptoms before he began treatment for sleep apnea, is also shows that he failed to follow the recommendations for treatment of his physicians to use a CPAP or Bi-PAP device to help his sleep apnea, nor did he stop smoking, nor did he "aggressively" lose weight as they recommended – all of which would have improved his condition. R. 18, 142, 144, 146, 185, 212, 214, 218, 243-44, 282, 284, 312, 316, 324. The ALJ accurately summarized the treatment notes in focusing on Plaintiff's failure to follow the recommendation of his doctors as evidence that his sleep apnea was not a severe impairment:

---

[4]Plaintiff's argument that "[t]he ALJ himself even described [Plaintiff's] impairment as a 'severe sleep disorder' [at R. 18]" is unavailing because the ALJ was merely quoting the doctor's diagnosis and was not making a finding with regard to a "severe" limitation under the SSA regulations.

> Although the claimant had a Bi-PAP machine to assist with his breathing while sleeping, he told Dr. Verma that he was "thinking of using" it. Dr. Verma stressed the importance of the claimant's treating his severe sleep disordered breathing by using the Bi-PAP. The claimant had discontinued the use of his bronchodilators. Dr. Verma referred the claimant to the emergency room for evaluation of his chest pain. Dr. Verma strongly advised the claimant to stop smoking. A drug screen was conducted on the claimant at Florida Hospital DeLand; the results revealed the presence of marijuana and opiates in the claimant's urine. At a follow up visit with Dr. Radhika Verma . . . [r]egarding his use of the C-PAP machine for his sleep apnea, the claimant told Dr. Verma that he used it sporadically. Dr. Verma's impression was: history of severe sleep apnea on Bi-PAP, "I again emphasized compliance;" asthma/COPD/Emphysema; the claimant was to continue with Spiriva; "he states he has not been using it;" smoking cessation was strongly advised; weight loss was also emphasized; the patient will return to care in two to three months; "we will assess his compliance data from his DME (durable medical equipment)."

R. 18. Other tests reported that Plaintiff had "modest improvement with bronchodilating medication." R. 136, 184. During the sleep study, Plaintiff experienced "marked" improvement with the machines. R. 190. In August of 2006, Plaintiff told the physician at the Volusia County Health Department that "he never got a C-PAP" machine because "he could not sleep with it" and he preferred to sleep in the recliner. R. 292.

The treatment records of Dr. Verma, especially those quoted by the ALJ, indicate that Plaintiff was non-compliant with the specialist's recommendations to use treatments – medications and the C-PAP machine – which testing had objectively shown would improve Plaintiff's sleep apnea. The ALJ's determination that Plaintiff's sleep apnea was not "severe," was based on substantial evidence.

### 4. *Step 2 determinations for all three conditions*

Plaintiff contends the ALJ should have found that his vascular disease and sleep apnea were severe impairments at Step Two of the sequential evaluation process. As the Eleventh Circuit has previously explained, the ALJ could not have committed an error at step two if he finds that the claimant had a severe impairment or combination of impairments based on some impairment and moves on to the next step in the evaluation, which is all that is required at step two. *Perry v. Astrue*, 280 Fed. Appx. 887, 2008 WL 2266315, at *6-7 (11th Cir. 2008); *see also Maziarz v. Secretary of Health and Human*

*Services*, 837 F.2d 240, 244 (6th Cir. 1987) (noting that a failure to find a particular impairment severe was not reversible error because the ALJ found other severe impairments).

In this case, the ALJ found in Plaintiff's favor at Step Two of the sequential evaluation process by finding that he had a severe impairment due to COPD (R. 16), and continued with the other steps of the sequential evaluation process to find Plaintiff could perform light work (with additional limitations). R. 23. Accordingly, even assuming arguendo that Plaintiff's leg swelling or sleep apnea should have been found to be "severe" limitations, the ALJ's finding at Step Two that COPD was "severe" and his continuation of the other steps in the evaluation process was all that was required.

**B.     Other work, less than SGA**

Plaintiff argues the ALJ erred in finding Plaintiff could perform substantial gainful activity based on Plaintiff's employment at the homeless shelter for forty-eight hours per week. Plaintiff distinguishes his work at the homeless shelter because he only cooks "dinner for the clients before they come in and then after that I just pretty much answer the phone and make sure nobody leaves, make sure nobody is drinking." R. 392. He is not required to sit at the desk the whole time. I'll get up and move to the couch or move to the chair and you know, usually to the recliner" and he has to elevate his legs. R. 403, 408. Plaintiff also argues that the AC "compounded the problem" by denying review in light of the evidence he submitted from his treating physician Dr. Hecht that he must keep his feet elevated most of the time. R. 365. Plaintiff also cites the VE's testimony that no job would allow a person to keep their legs elevated at any time. For the reasons discussed *supra* regarding Plaintiff's leg swelling, the ALJ and AC properly did not credit Plaintiff's testimony of Dr. Hecht's opinion in this regard.

Plaintiff contends that the ALJ "ruled" at the hearing that Plaintiff's job at the homeless center was "probably" not substantial gainful activity (R. 417), and Plaintiff's earnings are below substantial gainful activity. R. 22. Plaintiff argues that he "does not perform substantial gainful activity 48 hours

-14-

a week." The Plaintiff misconstrues the ALJ's finding – he did not find Plaintiff performs substantial gainful activity 48 hours a week. Rather, in assessing Plaintiff's credibility concerning his medically determinable impairments, the ALJ stated:

> The claimant testified that he is unable to work due to his numerous medical conditions. However, the claimant testified that he is currently working 48 hours a week at the homeless shelter where he resides. The claimant gave a detailed description of his duties at the homeless shelter which include responsibilities as a cook and case aid. At the time of the hearing in March 2008, his earnings were $140.00 a month less than the minimum amount required for substantial gainful activity. The claimant's allegedly disabling impairments have been present, according to the claimant since June 2005, at approximately the same level of severity. Those disabling impairments do not prevent the claimant from working at the homeless shelter. It stands to reason that if the claimant can work at the homeless shelter 48 hours a week, he can obtain gainful employment for 40 hours a week. The claimant's recent work history is sporadic. Despite the claimant's testimony that he was employed as a delivery man and salesman of portable aluminum storage sheds for 20 years, a review of his work history over the past seven years shows a pattern of unemployment for years at a time which raises the question as to whether the claimant's continuing underemployment is actually due to medical impairments.

R. 22. As the Commissioner argues, although Plaintiff's work activity did not rise to the level of substantial gainful activity, his work after his alleged onset date provides evidence undermining his subjective complaints of disabling pain and other symptoms.

Plaintiff argues the AC erred in denying review because he supplied to the AC a statement from his employer at the homeless shelter which states that Plaintiff "only performs actual work (cooking) 2 hours per day, 3 days per week." R. 366-68; 392. The Commissioner argues the employer's statement is inconsistent with Plaintiff's testimony regarding the extent of his work activity, citing R. 388-93. The Commissioner is correct that, even if Plaintiff only worked a few hours a day a few days each week – less than substantial gainful activity – the ALJ and in turn the AC in reviewing the ALJ, were allowed to take this into account in assessing his credibility. Given these circumstances, decisions of the ALJ and AC were based on substantial evidence.

**C. Side effects of medication**

Plaintiff contends that the ALJ did not do his duty at the hearing to elicit testimony or in his decision to make findings regarding the effect of medications on Plaintiff's ability to work. As an initial matter, the heightened duty to develop the record that Plaintiff cites from *Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981), applies when claimants are not represented; in this case Plaintiff was represented at the administrative hearing by counsel who had the opportunity to elicit any relevant testimony about his limitations. R.387-413. Plaintiff stated in SSA forms that he was taking no medications and had no side effects. R. 84, 99. He stated at the hearing that he was taking only water pills and blood pressure medication; he volunteered no side effects. R. 402. Moreover, the medical records do not appear to indicate that Plaintiff ever complained of side effects from his medications.

Plaintiff also argues that the AC erred by not granting review based on information sheets from Plaintiff's pharmacy with underlining which purportedly shows the side effects of Plaintiff's medications and pages from the Physicians Desk Reference. R. 369. Plaintiff argues the pharmacy information sheets are "new" evidence because they were not provided to the ALJ prior to the date of his decision, and the evidence is "material" because they show the potential side effects of Plaintiff's medications on his ability to work; thus, the AC should not have ignored this new evidence.

The AC denied Plaintiff's request for review of the ALJ's decision, and expressly referred to the "list of medications from Pierson Community Pharmacy" and "Statement from Claimant" as among the documents the AC reviewed. R. 6-8A. These pharmacy information sheets merely list the *potential* side effects of various medications. Plaintiff fails to explain why the pharmacy information sheets for medications that he had been on at the time of the hearing and well before the ALJ's decision are "new" evidence that could not have been provided to the ALJ prior to his decision; the Physician's Desk Reference also does not show anything "new" that could not have been supplied previously. Even assuming *arguendo* that this evidence was "new and material," the AC

-16-

appropriately denied it based on any evidence in the record that Plaintiff had ever complained of medication side effects in the medical records. The decision of the ALJ and the AC is based on substantial evidence.

### *IV. CONCLUSION*

The ALJ appropriately considered Plaintiff's circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on June 21, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record